**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 12-20291 CR-ALTONAGA

MAGISTRATE JUDGE
SIMONTON

18 U.S.C. § 1349
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 2
18 U.S.C. § 982

FILED by _____ D.C.

APR 2 6 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT
S. D. of FLA. – MIAMI

**UNITED STATES OF AMERICA**

vs.

**ARMANDO GONZALEZ,**
    **a/k/a Manny Gonzalez,**
**JOHN THOEN,**
**WONDERA EASON,**
**PAUL THOMAS LAYMAN,**
**ALEXANDRA HAYNES,**
**SERENA JOSLIN,**
**DANIEL MARTINEZ,**
**RAYMOND RIVERO,**
and
**IVON PEREZ,**

            Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment,

1.     The Medicare Program ("Medicare") was a federal health care program providing

benefits to persons who were over the age of sixty-five or disabled.  Medicare was administered

by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United

States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      The Florida Medicaid Program ("Florida Medicaid") was a federal health care program providing benefits to certain low-income individuals and families in Florida. Florida Medicaid was administered by CMS and the Agency for Health Care Administration ("AHCA").

3.      Medicare and Florida Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

4.      Part B of Medicare covered partial hospitalization programs ("PHPs") connected with the treatment of mental illness. The treatment program of PHPs closely resembled that of a highly structured, short-term hospital inpatient program, but it was a distinct and organized intensive treatment program that offered less than 24-hour daily care and was designed, in part, to reduce medical costs by treating qualifying individuals outside the hospital setting.

5.      Under the PHP benefit, Medicare covered the following services: (1) individual and group therapy with physicians or psychologists (or other authorized mental health professionals); (2) occupational therapy; (3) services of social workers, trained psychiatric nurses, and other staff trained to work with psychiatric patients; (4) drugs and biologicals furnished for therapeutic purposes that cannot be self-administered; (5) individualized activity therapies that are not primarily recreational or diversionary; (6) family counseling (for treatment of the patient's condition); (7) patient training and education; and (8) diagnostic services.

6.      Medicare generally required that the PHP be provided at a facility that is hospital-based or hospital-affiliated, but Medicare also allowed a PHP to be provided in a Community Mental Health Center ("CMHC"), which is a provider type under Part A of Medicare.

7.     Medicare required that, to qualify for the PHP benefit, the services must have been reasonable and necessary for the diagnosis and active treatment of the individual's condition. The program also must have been reasonably expected to improve or maintain the condition and functional level of the patient and to prevent relapse or hospitalization. The program must have been prescribed by a physician and furnished under the general supervision of a physician and under an established plan of treatment that meets Medicare requirements.

8.     Typically, a patient who needed this intensive PHP treatment had a long history of mental illness that had been treated. Patients were ordinarily referred either (a) by a hospital after full inpatient hospitalization for severe mental illness or (b) by a doctor who was trying to prevent full inpatient hospitalization for a severely mentally ill patient the doctor had been treating.

9.     Medicare guidelines specifically excluded meals and transportation from coverage under the PHP benefit.

10.     Medicare did not cover programs involving primarily social, recreational, or diversionary activities. Psychosocial programs that provided only a structured environment, socialization, or vocational rehabilitation were not covered by Medicare.

11.     In order to receive payment from Medicare, a CMHC, medical clinic, or physician was required to submit a health insurance claim form to Medicare, called a Form 1450. The claims may have been submitted in hard copy or electronically. A CMHC, medical clinic, and physician may have contracted with a billing company to transmit claims to Medicare on their behalf.

12.     Medicare Part B was administered in Florida by First Coast Service Options, which, pursuant to contract with the United States Department of Health and Human Services,

served as a contracted carrier to receive, adjudicate and pay Medicare Part B claims submitted to it by Medicare beneficiaries, physicians, or CMHCs. Medicare Part B paid CMHCs and physicians directly for the cost of PHP services furnished to eligible Medicare beneficiaries, provided that the services met Medicare requirements.

13.     Florida Medicaid covered community mental health services, including PHP treatment.

14.     An Assisted Living Facility ("ALF") meant any facility, whether operated for profit or not, which provided housing, meals, and one or more personal services for a period exceeding 24 hours to one or more adults who were not relatives of the owner or administrator. In Florida, AHCA licensed ALFs.

## Defendants, Relevant Entities, and Relevant Persons

15.     Health Care Solutions Network ("HCSN") was an entity that operated purported CMHCs in Florida and North Carolina.

16.     In Florida, Health Care Solutions Network, Inc. ("HCSN-FL") was a Florida corporation that operated purported CMHCs in Miami, Florida at the following addresses: 19355 South Dixie Highway, Miami, Florida 33157; 10406 S.W. 186th Terrace, Miami, Florida 33157; and 13155 S.W. 134th Street, Miami, Florida 33186.

17.     In North Carolina, Health Care Solutions Network of North Carolina, Inc. ("HCSN-NC") was a North Carolina corporation that operated a purported CMHC in Hendersonville, North Carolina at 170 Old Naples Road, Hendersonville, North Carolina 28792.

18.     Psychiatric Consulting Network, Inc. ("PCN") was a Florida corporation with the following addresses in Miami, Florida:  10406 S.W. 186th Terrace, Miami, Florida 33157, and

15160 S.W. 136th Street, Miami, Florida 33196. PCN was purportedly an independent contractor that determined the necessity and appropriateness of care rendered at HCSN.

19.     Procare Management and Financial Network, Inc. ("Procare") was a Florida corporation with the following addresses in Miami, Florida: 13200 S.W. 128th Street, Miami, Florida 33186; 9245 S.W. 158th Lane, Miami, Florida 33157; 19355 South Dixie Highway, Miami, Florida 33157; and 15160 S.W. 136th Street, Miami, Florida 33196. Procare was purportedly an independent contractor that handled the billing for HCSN.

20.     Defendant **ARMANDO GONZALEZ,** a/k/a Manny Gonzalez, a resident of Miami-Dade County and Henderson County in North Carolina, was the Director and President of HCSN-FL, the Chief Executive Officer of HCSN-NC, the President of PCN, and a Director of Procare.

21.     Defendant **JOHN THOEN,** a resident of Miami-Dade County, was a Registered Nurse (R.N.) who reviewed medical records and submitted claims for HCSN, was the Performance Improvement/Quality Assurance Coordinator for HCSN-NC, and was the President of PCN.

22.     Defendant **WONDERA EASON,** a resident of Miami-Dade County, managed and maintained the medical records for HCSN.

23.     Defendant **PAUL THOMAS LAYMAN,** a resident of Miami-Dade County, was the Substance Abuse Coordinator for HCSN-FL and the Utilization Management Coordinator for HCSN-NC.

24.     Defendant **ALEXANDRA HAYNES,** a resident of Miami-Dade County and Henderson County in North Carolina, was the Program Coordinator for HCSN-NC.

25.    Defendant **SERENA JOSLIN**, a resident of Buncombe County in North Carolina, was the Clinical Coordinator for HCSN-NC.

26.    Defendant **DANIEL MARTINEZ**, a resident of Miami-Dade County, was the owner of an ALF called Mi Renacer ALF which was located at 1305 S.E. 7th Street, Homestead, Florida, 33033.  **MARTINEZ** was also the President and Director of Mi Renacer ALF, Inc., a Florida corporation with a principal address of 1305 S.E. 7th Street, Homestead, Florida, 33033.

27.    Defendant **RAYMOND RIVERO**, a resident of Miami-Dade County, was the owner of an ALF called God is First ALF which was located at 11316 S.W. 246th Terrace, Miami, Florida 33032.  **RIVERO** was also the President and Director of God is First A.L.F., Inc., a Florida corporation with a principal address of 11316 S.W. 246th Terrace, Miami, Florida 33032.

28.    Defendant **IVON PEREZ**, a resident of Miami-Dade County, was the owner of an ALF called Kayleen and Denis Care which was located at 15700 S.W. 296th Street, Homestead, Florida 33033.  **PEREZ** was also the President of Kayleen & Denis Care, Inc., a Florida corporation with a principal address of 15700 S.W. 296th Street, Homestead, Florida 33033.

## COUNT 1
## Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

1.    Paragraphs 1 through 25 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    From on or about November 16, 2004, through on or about March 18, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ARMANDO GONZALEZ,**
**a/k/a Manny Gonzalez,**

**JOHN THOEN,**
**WONDERA EASON,**
**PAUL THOMAS LAYMAN,**
**ALEXANDRA HAYNES,**
**and**
**SERENA JOSLIN,**

did knowingly and willfully combine, conspire, confederate and agree with others, known and

unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to

execute a scheme and artifice to defraud a health care benefit program affecting commerce, as

defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to

obtain, by means of materially false and fraudulent pretenses, representations, and promises,

money and property owned by, and under the custody and control of, said health care benefit

program, in connection with the delivery of and payment for health care benefits, items, and

services.

## PURPOSE OF THE CONSPIRACY

3.   It was a purpose and object of the conspiracy for **ARMANDO GONZALEZ,**

**JOHN THOEN, WONDERA EASON, PAUL THOMAS LAYMAN, ALEXANDRA**

**HAYNES, and SERENA JOSLIN,** and their co-conspirators, to unlawfully enrich themselves

by, among other things;  (a) submitting false and fraudulent claims to Medicare and Medicaid

through HCSN for services that were medically unnecessary, that were not eligible for Medicare

and Medicaid reimbursement, and that were never provided; (b) concealing the submission of

false and fraudulent claims to Medicare and Medicaid and the receipt and transfer of the

proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit

of the defendants and their co-conspirators in the form of compensation and other remuneration.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.    **ARMANDO GONZALEZ** would form HCSN-FL as a non-profit organization registered in the State of Florida through which he operated two purported CMHCs in Miami.

5.    **ARMANDO GONZALEZ** would form HCSN-NC as a non-profit organization registered in the State of North Carolina through which he operated a purported CMHC in Hendersonville.

6.    **ARMANDO GONZALEZ** would maintain Medicare and Medicaid provider numbers for all of HCSN's locations in order to submit claims to Medicare and Medicaid for PHP services.

7.    **ARMANDO GONZALEZ** would pay and cause the payment of cash kickbacks to ALF owners and operators in exchange for the ALFs delivering and causing the delivery of ineligible patients housed at their facilities to HCSN-FL for purported PHP treatment.

8.    **ARMANDO GONZALEZ, JOHN THOEN, WONDERA EASON, ALEXANDRA HAYNES,** and **SERENA JOSLIN** would recruit and cause the recruitment of patients from ALF and nursing home owners and operators to receive purported PHP treatment at HCSN-NC.

9.    **ARMANDO GONZALEZ, JOHN THOEN, WONDERA EASON, PAUL THOMAS LAYMAN, ALEXANDRA HAYNES,** and **SERENA JOSLIN** altered and caused the alteration of HCSN records to support claims to Medicare and Medicaid for PHP services that were medically unnecessary and never provided.

10.     **ARMANDO GONZALEZ, JOHN THOEN, WONDERA EASON, PAUL THOMAS LAYMAN, ALEXANDRA HAYNES,** and **SERENA JOSLIN** would submit and cause to be submitted false and fraudulent claims to Medicare and Medicaid for PHP services when patients were actually watching television and movies and were not attending HCSN.

11.     **ARMANDO GONZALEZ, JOHN THOEN, WONDERA EASON, PAUL THOMAS LAYMAN, ALEXANDRA HAYNES,** and **SERENA JOSLIN** would divert the fraud proceeds for their personal use and benefit, and the use and benefit of others.

12.     **ARMANDO GONZALEZ, JOHN THOEN, WONDERA EASON, PAUL THOMAS LAYMAN, ALEXANDRA HAYNES,** and **SERENA JOSLIN** would submit and cause to be submitted false and fraudulent claims to Medicare and Medicaid for services purportedly provided at HCSN's locations in an amount exceeding $63 million.

All in violation of Title 18, United States Code, Section 1349.

### COUNT 2
**Conspiracy to Receive and Pay Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.     Paragraphs 1, 3 through 12, 14 through 16, 20, and 26 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From on or about November 16, 2004, through on or about March 18, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ARMANDO GONZALEZ,**
**a/k/a Manny Gonzalez,**
**and**
**DANIEL MARTINEZ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a. To violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals to a person or persons for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and

b. To violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, to any person or persons to induce such person or persons to refer individuals to a person or persons for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

3.    It was a purpose of the conspiracy for **ARMANDO GONZALEZ** and **DANIEL MARTINEZ** and their co-conspirators to unlawfully enrich themselves by receiving and paying kickbacks and bribes in exchange for (a) securing the attendance of Medicare beneficiaries at HCSN and (b) providing Medicare beneficiary information to HCSN that was used to submit claims to Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.     **ARMANDO GONZALEZ** would pay and cause the payment of kickbacks to ALF owners and operators, including **DANIEL MARTINEZ,** in exchange for the ALFs referring patients to HCSN, and arranging for Medicare beneficiaries to receive purported PHP treatment at HCSN.

5.     **DANIEL MARTINEZ** would refer Medicare beneficiaries to HCSN for purported PHP treatment, and arrange for Medicare beneficiaries to receive purported PHP treatment at HCSN, in exchange for receiving kickbacks.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

6.     In or around April 2008, **ARMANDO GONZALEZ** delivered and caused the delivery of a cash kickback to **DANIEL MARTINEZ** in exchange for referring Medicare beneficiary E.D. from Mi Renacer ALF to HCSN.

7.     In or around April 2008, **DANIEL MARTINEZ** referred Medicare beneficiary E.D. from Mi Renacer ALF to HCSN in exchange for receiving a cash kickback.

8.     In or around April 2008, **ARMANDO GONZALEZ** delivered and caused the delivery of a cash kickback to **DANIEL MARTINEZ** in exchange for referring Medicare beneficiary L.S. from Mi Renacer ALF to HCSN.

9.    In or around April 2008, **DANIEL MARTINEZ** referred Medicare beneficiary L.S. from Mi Renacer ALF to HCSN in exchange for receiving a cash kickback.

All in violation of Title 18, United States Code, Section 371.

### COUNT 3
**Conspiracy to Receive and Pay Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.    Paragraphs 1, 3 through 12, 14 through 16, 20, and 27 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    From on or about November 16, 2004, through on or about March 18, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ARMANDO GONZALEZ,**
**a/k/a Manny Gonzalez,**
**and**
**RAYMOND RIVERO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

   a.  To violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals to a person or persons for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and

   b.  To violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes,

12

directly and indirectly, overtly and covertly, to any person or persons to induce such person or persons to refer individuals to a person or persons for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for **ARMANDO GONZALEZ** and **RAYMOND RIVERO** and their co-conspirators to unlawfully enrich themselves by receiving and paying kickbacks and bribes in exchange for (a) securing the attendance of Medicare beneficiaries at HCSN and (b) providing Medicare beneficiary information to HCSN that was used to submit claims to Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **ARMANDO GONZALEZ** would pay and cause the payment of kickbacks to ALF owners and operators, including **RAYMOND RIVERO,** in exchange for the ALFs referring patients to HCSN, and arranging for Medicare beneficiaries to receive purported PHP treatment at HCSN.

5.      **RAYMOND RIVERO** would refer Medicare beneficiaries to HCSN for purported PHP treatment, and arrange for Medicare beneficiaries to receive purported PHP treatment at HCSN, in exchange for receiving kickbacks.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

6.      In or around June 2008, **ARMANDO GONZALEZ** delivered and caused the delivery of a cash kickback to **RAYMOND RIVERO** in exchange for referring Medicare beneficiary E.F. from God is First ALF to HCSN.

7.      In or around June 2008, **RAYMOND RIVERO** referred Medicare beneficiary E.F. from God is First ALF to HCSN in exchange for receiving a cash kickback.

8.      In or around June 2008, **ARMANDO GONZALEZ** delivered and caused the delivery of a cash kickback to **RAYMOND RIVERO** in exchange for referring Medicare beneficiary D.D. from God is First ALF to HCSN.

9.      In or around June 2008, **RAYMOND RIVERO** referred Medicare beneficiary D.D. from God is First ALF to HCSN in exchange for receiving a cash kickback.

All in violation of Title 18, United States Code, Section 371.

### COUNT 4
### Conspiracy to Receive and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1, 3 through 12, 14 through 16, 20, and 28 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.    From on or about November 16, 2004, through on or about March 18, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ARMANDO GONZALEZ,**
**a/k/a Manny Gonzalez,**
**and**
**IVON PEREZ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a. To violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals to a person or persons for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare; and

b. To violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, to any person or persons to induce such person or persons to refer individuals to a person or persons for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

3.    It was a purpose of the conspiracy for **ARMANDO GONZALEZ** and **IVON PEREZ** and their co-conspirators to unlawfully enrich themselves by receiving and paying kickbacks and bribes in exchange for (a) securing the attendance of Medicare beneficiaries at HCSN and (b) providing Medicare beneficiary information to HCSN that was used to submit claims to Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.    **ARMANDO GONZALEZ** would pay and cause the payment of kickbacks to ALF owners and operators, including **IVON PEREZ,** in exchange for the ALFs referring patients to HCSN, and arranging for Medicare beneficiaries to receive purported PHP treatment at HCSN.

5.    **IVON PEREZ** would refer Medicare beneficiaries to HCSN for purported PHP treatment, and arrange for Medicare beneficiaries to receive purported PHP treatment at HCSN, in exchange for receiving kickbacks.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

6.    In or around January 2008, **ARMANDO GONZALEZ** delivered and caused the delivery of a cash kickback to **IVON PEREZ** in exchange for referring Medicare beneficiary A.C. from Kayleen and Denis Care to HCSN.

7.      In or around January 2008, **IVON PEREZ** referred Medicare beneficiary A.C. from Kayleen and Denis Care to HCSN in exchange for receiving a cash kickback.

8.      In or around February 2008, **ARMANDO GONZALEZ** delivered and caused the delivery of a cash kickback to **IVON PEREZ** in exchange for referring Medicare beneficiary G.O. from Kayleen and Denis Care to HCSN.

9.      In or around February 2008, **IVON PEREZ** referred Medicare beneficiary G.O. from Kayleen and Denis Care to HCSN in exchange for receiving a cash kickback.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 5-10**
**Solicitation and Receipt of Health Care Kickbacks**
**(42 U.S.C. § 1320a-7b(b)(1))**

1.      Paragraphs 1, 3 through 12, 14 through 16, 20 through 23, and 26 through 28 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below, the exact dates being unknown to the Grand Jury, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants listed below, did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

| Count | Defendant | Beneficiary | Approximate Date Of Kickback |
|---|---|---|---|
| 5 | **DANIEL MARTINEZ** | E.D. | April 2008 |
| 6 | **DANIEL MARTINEZ** | L.S. | April 2008 |

17

| 7  | **RAYMOND RIVERO** | D.D. | June 2008     |
|----|--------------------|------|---------------|
| 8  | **RAYMOND RIVERO** | E.F. | June 2008     |
| 9  | **IVON PEREZ**     | A.C. | January 2008  |
| 10 | **IVON PEREZ**     | G.O. | February 2008 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1) and Title 18, United States Code, Section 2.

## COUNT 11
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

1.     From on or about November 16, 2004, through on or about March 18, 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ARMANDO GONZALEZ,**
**a/k/a/ Manny Gonzalez,**
**and**
**JOHN THOEN,**

did knowingly combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit: to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, and knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

2.     It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 12 - 17
### Money Laundering
### (18 U.S.C. § 1957)

1.     On or about the dates set forth below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### ARMANDO GONZALEZ,
### a/k/a/ Manny Gonzalez,

did knowingly engage and attempt to engage in the following monetary transactions by through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity.

| Count | Approx. Date | Monetary Transaction |
|-------|--------------|---------------------|
| 12 | 07/5/2007 | Negotiated HCSN check number 1778 in the approximate amount of $16,364 using an account ending in 5171 held by **GONZALEZ** |
| 13 | 08/17/2007 | Negotiated HCSN check number 2004 in the approximate amount of $25,000 using an account ending in 7094 held by **GONZALEZ** |
| 14 | 09/25/2007 | Negotiated HCSN check number 1666 in the approximate amount of $34,000 using an account ending in 7094 held by **GONZALEZ** |
| 15 | 09/25/2007 | Negotiated HCSN check number 1809 in the approximate amount of $16,000 using an account ending in 5171 held by **GONZALEZ** |
| 16 | 09/8/2009 | Negotiated HCSN check number 4874 in the approximate amount of $15,000 using an account ending in 5171 held by **GONZALEZ** |
| 17 | 01/12/2011 | Negotiated HCSN check number 5721 in the approximate amount of $10,970 using an account ending in 0811 held by **GONZALEZ** |

2.      It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

In violation of Title 18, United States Code, Sections 1957 and 2.

**COUNTS 18-23**
**Money Laundering**
**(18 U.S.C. § 1956(a)(1)(B)(i))**

1.      On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**ARMANDO GONZALEZ,**
**a/k/a/ Manny Gonzalez,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, which financial transaction involved the proceeds of specified unlawful activity knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Approx. Date | Financial Transaction |
|:-----:|:------------:|-----------------------|
| 18 | 09/5/2007 | Negotiated HCSN check number 1653 in the approximate amount of $28,000 using an account ending in 7094 held by **GONZALEZ** |
| 19 | 11/8/2007 | Negotiated HCSN check number 1700 in the approximate amount of $16,000 using an account ending in 7094 held by **GONZALEZ** |
| 20 | 05/6/2008 | Negotiated HCSN check number 1905 in the approximate amount of $30,000 using an account ending in 5171 held by **GONZALEZ** |
| 21 | 01/6/2009 | Made wire transfer from HCSN account ending in 7094 held by **GONZALEZ** in the amount of $110,000 to a PCN account ending in 7153 held by **GONZALEZ** |

20

| Count | Approx. Date | Financial Transaction |
|-------|--------------|----------------------|
| 22 | 01/6/2009 | Made wire transfer from HCSN account ending in 5171 held by **GONZALEZ** in the amount of $140,000 to a PCN account ending in 7153 held by **GONZALEZ** |
| 23 | 04/2/2009 | Made wire transfer from HCSN account ending in 5171 held by **GONZALEZ** in the amount of $100,000 to a PCN account ending in 7153 held by **GONZALEZ** |

2.      It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349.

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.      The allegations contained in Counts 1 through 4 and 11 through 23 of this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which any of the defendants, **ARMANDO GONZALEZ, JOHN THOEN, WONDERA EASON, PAUL THOMAS LAYMAN, ALEXANDRA HAYNES, SERENA JOSLIN, DANIEL MARTINEZ, RAYMOND RIVERO,** and **IVON PEREZ,** has an interest.

2.      Upon conviction of any of the offenses alleged in Counts 1 through 4 in this Indictment, **ARMANDO GONZALEZ, JOHN THOEN, WONDERA EASON, PAUL THOMAS LAYMAN, ALEXANDRA HAYNES, SERENA JOSLIN, DANIEL MARTINEZ, RAYMOND RIVERO,** and **IVON PEREZ** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense pursuant to Title 18, United States Code, Section 982(a)(7).

21

3.      Upon conviction of Counts 11 through 23, as alleged in this Indictment, **ARMANDO GONZALEZ** and **JOHN THOEN** shall forfeit to the United States any property, real or personal, involved in the commission of the offense or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.      The property subject to forfeiture includes, but is not limited to, the sum of $28,092,283.00 in United States currency, which sum represents the gross proceeds of the health care fraud offense.

5.      The property subject to forfeiture includes, but is not limited to the following:

   a.   the sum of $28,092,283.00 in United States currency, which sum represents the gross proceeds of the health care fraud offense;

   b.   real property located at 170 Old Naples Road, Naples, North Carolina 28760;

   c.   real property located at 640 Grand Oaks Drive, Hendersonville, North Carolina, 28792;

6.      If any of the property described above, as a result of any act or omission of the defendants:

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the court;

   d.   has been substantially diminished in value; or

   e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1). Specifically, said substitute assets may include the following:

1) 2012 Kia Soul, VIN # KNDJT2A60C7353232;

2) 2009 Cadillac Escalade, VIN # 1GYFC26209R240139;

3) 2007 Patriot, VIN # 5TTBE10117D002137;

4) 2011 Ford Truck, VIN # 1FBSS3BL7BDA77993;

5) 2010 VMA/PAMU, VIN # 4FPUB1428AG147067;

6) 2009 BMW, VIN # WBAWL73589P179813;

7) 2007 Cadillac, VIN #1GYFK66847R361915;

8) 2007 Mercedes Benz, VIN # 4JGCB65E77A041384;

9) 2007 Ford, VIN # 1FDXE45SX6DB21052;

10) 2002 Ford, VIN # 1FBSS31L42HA36781;

11) 2002 Ford, VIN # 1FBSS31LX2HB26761;

12) 2007 Ford, VIN # 1FDXE45S26DB24110;

13) 2007 Ford, VIN # 1FDXE45SX6DB24114;

14) 2004 Ford, VIN # 1FDWE45F33HB77644;

15) 2008 Ford, VIN # 1FD4E45P48DB35112;

16) 2008 Dodge, VIN # 2D8HN44H08R705766;

17) 2009 Volkswagen Passat, VIN # WVWJK73C59P045279.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (a)(7), and the procedures outlined in Title 21, United States Code, Section 853.

A TRUE BILL

WIFREDO A. FERRER
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

SAM S. SHELDON
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

STEVEN KIM
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
| --- | --- |
| vs. | |
| ARMANDO GONZALEZ, et al. | **CERTIFICATE OF TRIAL ATTORNEY*** |
| **Defendants.** | |
| _____ / | **Superseding Case Information:** |

**Court Division:** (Select One)

| | | | New Defendant(s) | Yes _____ | No _____ |
| --- | --- | --- | --- | --- | --- |
| __X__ Miami | _____ Key West | | Number of New Defendants | _____ | |
| _____ FTL | _____ WPB | _____ FTP | Total number of counts | _____ | |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)      Yes
   List language and/or dialect      Spanish

4. This case will take     20     days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | | | | (Check only one) | |
   | --- | --- | --- | --- | --- |
   | I | 0 to 5 days | _____ | Petty | _____ |
   | II | 6 to 10 days | _____ | Minor | _____ |
   | III | 11 to 20 days | __X__ | Misdem. | _____ |
   | IV | 21 to 60 days | _____ | Felony | __X__ |
   | V | 61 days and over | _____ | | |

6. Has this case been previously filed in this District Court? (Yes or No)     No
   If yes:
   Judge: _____     Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?     (Yes or No)     No
   If yes:
   Magistrate Case No.     _____
   Related Miscellaneous numbers:     _____
   Defendant(s) in federal custody as of     _____
   Defendant(s) in state custody as of     _____
   Rule 20 from the     _____     District of _____

   Is this a potential death penalty case? (Yes or No)     No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?     _____ Yes     __X__ No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?     _____ Yes     __X__ No

STEVEN KIM
DOJ TRIAL ATTORNEY
Court No. A5501162

*Penalty Sheet(s) attached

REV 4/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Armando Gonzalez, a/k/a Manny Gonzalez   **Case No:** _____

Count #:      1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud

**\*Max Penalty**:    10 years' imprisonment

Counts #:     2 - 4

Title 18, United States Code, Section 371

Conspiracy to Receive and Pay Health Care Kickbacks

**\*Max Penalty**:    5 years' imprisonment as to each count

Count #      11

Title 18, United States Code, Section 1956(h)

Conspiracy to Commit Money Laundering

**\*Max Penalty**:    20 years' imprisonment

Counts #:    12 - 17

Title 18, United States Code, Section 1957

Money Laundering

**\*Max Penalty**:   10 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   Armando Gonzalez, a/k/a Manny Gonzalez   **Case No:** _____

Counts #:      18 - 23

 Title 18, United States Code, Section 1956(a)(1)(B)(i)

 Money Laundering

**\*Max Penalty**:   10 years' imprisonment as to each count

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   John Thoen   **Case No:** _____

Count #:      1

 Title 18, United States Code, Section 1349

 Conspiracy to Commit Health Care Fraud

**\*Max Penalty**:   10 years' imprisonment

Count #:      11

 Title 18, United States Code, Section 1956(h)

 Conspiracy to Commit Money Laundering

**\*Max Penalty**:  20 years' imprisonment

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Wondera Eason                    **Case No:** _____

Count #:        1

 Title 18, United States Code, Section 1349 _____

 Conspiracy to Commit Health Care Fraud _____

**\*Max Penalty**:    10 years' imprisonment _____

Count #:

_____

_____

**\*Max Penalty**: _____

Count #:

_____

_____

**\*Max Penalty**: _____

Count #:

_____

_____

**\*Max Penalty**: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**   Paul Thomas Layman            **Case No:** _____

Count #:       1

 Title 18, United States Code, Section 1349

 Conspiracy to Commit Health Care Fraud

**\*Max Penalty**:    10 years' imprisonment

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name:**   <u>Alexandra Haynes</u>   **Case No:** _____

Count #:      1

<u>Title 18, United States Code, Section 1349</u>

<u>Conspiracy to Commit Health Care Fraud</u>

**\*Max Penalty**:   <u>10 years' imprisonment</u>

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Serena Joslin _____    **Case No:** _____

Count #:      1

 Title 18, United States Code, Section 1349 _____

 Conspiracy to Commit Health Care Fraud _____

**\*Max Penalty**:   10 years' imprisonment _____

Count #:

_____

_____

**\*Max Penalty**: _____

Count #:

_____

_____

**\*Max Penalty**: _____

Count #:

_____

_____

**\*Max Penalty**: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Daniel Martinez            **Case No:** _____

Count #:      2

 Title 18, United States Code, Section 371

 Conspiracy to Receive and Pay Health Care Kickbacks

**\*Max Penalty**:    5 years' imprisonment

Counts #:      5 - 6

 Title 42, United States Code, Section 1320a-7b(b)(1)

 Solicitation and Receipt of Health Care Kickbacks

**\*Max Penalty**:     5 years' imprisonment as to each count

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Raymond Rivero              **Case No:** _____

Count #:      3

 Title 18, United States Code, Section 371

 Conspiracy to Receive and Pay Health Care Kickbacks

**\*Max Penalty**:    5 years' imprisonment

Counts #:      7 - 8

 Title 18, United States Code, Section 1956(h)

 Conspiracy to Commit Money Laundering

**\*Max Penalty**:    20 years' imprisonment as to each count

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   Ivon Perez          **Case No:** _____

Count #:      4

 Title 18, United States Code, Section 371

 Conspiracy to Receive and Pay Health Care Kickbacks

**\*Max Penalty**:   5  years' imprisonment

Counts #:      9 - 10

 Title 42, United States Code, Section 1320a-7b(b)(1)

 Solication and Receipt of Health Care Kickbacks

**\*Max Penalty**:   5 years' imprisonment as to each count

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

**\*Max Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**